# MANDATE

Conn/new haven
01-CV-246
Hon. Burns

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 15TH day of April, two thousand and five.

PRESENT:    HON. JOSEPH M. MCLAUGHLIN,
            HON. PIERRE N. LEVAL,
            HON. SONIA SOTOMAYOR, .

                            Circuit Judges.



FILED APR 1 5 2005
Roseann B. MacKechnie, CLERK
SECOND CIRCUIT

-----------------------------------------------------------X

CHARLES M. PARROT,

       Plaintiff-Appellant,

   - v. -                      No. 02-7980

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

       Defendant-Appellee.

-----------------------------------------------------------X

Appearing for Appellant:    BRUCE L. ELSTEIN, Elstein and Elstein, P.C., Bridgeport, CT (David C. Grimes, on the brief), for Plaintiff-Appellant.

Appearing for Appellee:     FRANCIS H. MORRISON III, Day, Berry & Howard LLP, Hartford, CT (Deborah S. Russo, on the brief), for Defendant-Appellee

ISSUED AS MANDATE: MAY 1 0 2005

Charles M. Parrot appeals from the United States District Court for the District of Connecticut's (Burns, J.) grant of judgment as a matter of law to the Guardian Life Insurance Company of America ("Guardian").

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, be and it hereby is **AFFIRMED**.

In our previous consideration of this appeal, we certified to the Connecticut Supreme Court a question on the proper construction of a Connecticut insurance statute. We have received an answer. Accordingly, the case is before us a second time for a final disposition.

We assume familiarity with our prior certification order, Parrot v. The Guardian Life Insurance. Company of America, 338 F.3d 140 (2d Cir. 2003), and the resulting decision of the Connecticut Supreme Court, Parrot v. The Guardian Life Insurance Company of America, 273 Conn. 12, 866 A.2d 1273 (Conn. 2005).

On appeal, Parrot raised two claims: (1) "income rules" that were not attached to his disability insurance policy are "invalid" under Connecticut General Statute § 38a-483(a)(1), which mandates that the "entire contract" be made available to the insured; and (2) the contract term "rate of earnings when you first became disabled," which is used to calculate the maximum amount of additional insurance the policyholder is eligible to purchase, refers to the last month, not the last twelve months, before he became disabled.

To determine whether the district court erred in granting judgment as a matter of law to Guardian on the first issue, we certified two related questions:

(1) Does Conn. Gen. Stat. § 38a-483(a)(1)'s requirement that the "entire contract" be provided to the insured prohibit an insurance company from incorporating by reference current and future annual benefit rates, where the insurer can neither decrease nor eliminate a fixed benefit of the original policy?

(2) In the event that the unappended income rules are void under § 38a-483(a)(1), what is the proper remedy in this case?

Parrot, 338 F.3d at 145.

The second issue, which involves the interpretation of a

contractual provision, we reserved for ourselves to decide.

A.  Certified Questions

The Connecticut Supreme Court has answered the first question in the negative. Parrot, 273 Conn. at 14. The Court noted that "[t]he language of the statute makes clear that the 'entire contract' clause was designed to protect policyholders once a policy is 'delivered or issued for delivery . . . .'" Id. at 20. Based on this "prerequisite" the Court concluded that Sanghavi v. Paul Revere Life Insurance Company, 214 Conn. 303 (1990), was not controlling because in Sanghavi "the income rules affected the benefits payable under an existing policy that had been issued and delivered to the policyholder," Parrot, 273 Conn. at 20, whereas, in the present case, the rider "provided that Guardian would apply its income rules to underwrite a wholly separate policy in the future." Id. Thus, "the income rules referenced in Parrot's rider did not affect the benefits payable under an existing policy that had been issued and delivered to Parrot." Id. Accordingly, "§ 38a-483(a)(1) does not invalidate the income condition described [in Parrot's rider]." Id.

Because Guardian's income rules control Parrot's benefits rate, the district court's grant of judgment as a matter of law is affirmed as to Parrot's first claim.

The Connecticut Supreme Court's negative answer to the first question moots the second question. We, therefore, turn to the remaining contract issue.

B.  "Rate of Earnings"

We must next address whether "rate of earnings" in the insurance contract refers to the last twelve months or just the one month before Parrot became disabled. This question is significant because Parrot earned substantially more in the month before the onset of his disability than the average of the previous twelve months.

We review de novo a district court's interpretation of a contract, including whether a particular provision is ambiguous. See Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 198-99 (2d Cir. 2003).

Parrot argues that "rate of earnings" refers to his income during the last month he worked before he became disabled. He relies on a provision of the insurance contract which states, "[y]our earned income for purposes of the option plan will be

3

deemed to be your <u>rate of earnings</u> when you first became disabled under this policy." (emphasis added). But, the foregoing does not answer the question whether "rate of earnings" is calculated by the last month or by an average of the entire year before the onset of disability.

In the alternative, Parrot argues that the language is ambiguous, thus requiring an interpretation in his favor. <u>See Schultz v. Hartford Fire Ins. Co.</u>, 213 Conn. 696, 702 (1990) ("Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (internal citation and quotations omitted)). Admittedly, Guardian's language is not a paragon of clarity, but the policy viewed as a whole demonstrates the parties' intent to calculate the "rate of earnings" referred to in the disability section by the last twelve months of employment.

The application for the original 1988 policy required that Parrot list "all <u>earned income</u> after business expenses, but before any other deductions ... for federal tax purposes." (emphasis added). "Earned income," in turn, appears to be defined, on Parrot's application, as the "current <u>annual</u> rate" reported on the insured's tax return. (emphasis added). Guardian also identifies similar language in the 1995 policy application for additional insurance, which further clarifies that "earned income means . . . compensation . . . as reported for federal income tax purposes on IRS Form 1040." The applications, with their references to "earned income," were: (1) attached to both Parrot's 1988 and 1995 policies; and (2) a part of the contract as agreed by the parties.

We note that the references to "earned income" in the attached policy applications are not perforce synonymous with either "earned income" or the "rate of earnings when you first became disabled" as these terms are used in the contested provision of the insurance contract. But, these references, in context, sufficiently demonstrate the parties' intent.

## CONCLUSION

For the reasons set forth above, the judgment is AFFIRMED.

FOR THE COURT:
Roseann B. MacKechnie, Clerk

By: *Lucille Carr*
Deputy Clerk

A TRUE COPY
Roseann B. MacKechnie, CLERK

by _____
DEPUTY CLERK

4